(14 Misc. Rep. 58.)

### DUDLEY v. FLUSHING JOCKEY CLUB.

(Common Pleas of New York City and County, Special Term. August, 1895.)

GAMING—HORSE RACES—RECOVERY OF STAKES.

    Laws 1895, c. 570, authorizing horse races to be run for purses or stakes to be contributed for that purpose, and providing that only the owners of horses contesting in a race "shall have any pecuniary interest in the purse * * * or stake contested for in such race, or be entitled to or receive any portion thereof after such race is finished, and the whole of such purse * * * or stake shall be allotted in accordance with the terms and conditions of such race," violates Const. 1895, art. 1, § 9, prohibiting any kind of gambling, since the interest in the stakes is dependent on the result of the race.

Action by John C. Dudley against the Flushing Jockey Club to recover the amount of "sweepstakes" alleged to have been won by plaintiff's horse at a certain race. Defendant demurs to the complaint. Sustained.

Joel M. Marx, for plaintiff.

Benjamin Steinhardt, for defendant.

BISCHOFF, J. The complaint in this action sets forth all the essential facts showing compliance by the defendant with the provisions of chapter 570, Laws 1895, entitled "An act for the incorporation of associations for the improvement of the breed of horses and to regulate the same; and to establish a state racing commission." Plaintiff then alleges in detail the terms and conditions under which a certain horse race was run, under the auspices of the defendant; avers that the horse owned by him, and duly entered for the race, agreeably to such terms and conditions, became the winner, and claims the amount of the "sweepstakes" to which, under his agreement with defendant, he thus became entitled, and which, upon demand, the latter had refused to pay. The demurrer is interposed generally upon the ground of insufficiency, but the argument was confined principally to the theory that the enactment above referred to offends against the provision of the state constitution expressed as follows:

"Nor shall any lottery or the sale of lottery tickets, pool selling, bookmaking or any other kind of gambling hereafter be authorized or allowed within this state, and the legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section." Const. 1895, art. 1, § 9.

If it could be said that the statute in question merely sought to suspend the operation of some existing penal statute, with regard to the acts authorized by its terms, and recognized no contractual right arising from transactions such as the complaint sets forth, the pleading should be held insufficient in substance, without touching upon the question of constitutionality, since, apart from express legislative sanction, the plaintiff could not be heard in law to complain upon the state of facts disclosed. Gibbons v. Gouverneur, 1 Denio, 170; Ruckman v. Pitcher, 1 N. Y. 392; 3 Rev. St. (Banks Bros.' 7th Ed.) p. 1962, c. 20, tit. 8, art. 3, § 8. An act of the legislature is to be supported in every instance, if possible, and is only to be declared unconstitutional when its language plainly precludes every reasonable construction other than that it was intended by the enactment to infract the organic law. People v. Briggs, 50 N. Y. 553. Indubitably, however, to my mind, the statute under consideration recognizing a contract obligation arising from a state of facts such as that in suit, by obvious implication accomplishes, so far, a repeal of the section of the Revised Statutes above cited, and, as a result, the plaintiff's apparent right is founded upon an infraction of the constitutional provision previously set forth. The act provides (section 3):

"At such trotting or running race meetings the corporation, or the owners of horses engaged in such races, or others, who are not participants in the race, may contribute purses, prizes, premiums or stakes to be contested for,

but no person or persons other than the owner or owners of a horse or horses contesting in a race shall have any pecuniary interest in a purse, prize, premium or stake contested for in such race or be entitled to or receive any portion thereof after such race is finished, and the whole of such purse, prize, premium or stake shall be allotted in accordance with the terms and conditions of such race."

Here, then, we have an express statutory recognition of a pecuniary interest in the result of the races, as authorized by the act. Such an interest, depending upon a chance or contingent event, as, in this case, an interest in sweepstakes abiding the result of a horse race, in which all the participants joined in furnishing the stake (Harris v. White, 81 N. Y. 532), did not heretofore exist in legal contemplation (Gibbons v. Gouverneur, supra). Further, the owner of the winning horse is expressed to be "entitled" to the amount of this pecuniary interest, and the allotment of the stake is required to be in accordance with the terms and conditions of the race. The attempt is clearly to legalize the wager. That this statute, in so far as it authorizes and allows a recovery for "sweepstakes" won upon a horse race, contravenes the constitutional inhibition against the authorization of "any kind of gambling," is self-evident. The outcome of a horse race depends upon "chance" (Irving v. Britton, 8 Misc. Rep. 201, 28 N. Y. Supp. 529); a contract for the payment of "sweepstakes" is void under the statute against gaming (Gibbons v. Gouverneur, supra); and every element of uncertainty and contingency of the event upon which the money is wagered or staked is present in such a case, to bring the transaction within the letter and spirit of the word "gambling."

I conclude that the demurrer should be sustained, and judgment directed for the defendant, with costs.